UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHARANDEEP VENABLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:08-CV-00904-LSC |
| | ) | |
| UNITED STATES STEEL CORP., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.  Introduction.

The Court has for consideration a motion for summary judgment, which was filed by the defendant, United States Steel Corporation ("U.S. Steel"), on March 2, 2009.  (Doc. 17.)  Plaintiff Sharandeep Venable sued U.S. Steel for unlawful termination based on race, national origin, ethnicity, and religion under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 (" § 1981").  (Doc. 1.)  U.S. Steel moved for summary judgment on all of Plaintiff's claims.  The issues raised in Defendant's motion have been briefed by both parties and are now ripe for review.  Upon full consideration of the legal arguments and evidence

presented by the parties, U.S. Steel's motion for summary judgment will be granted in part and denied in part.

## II. Facts.[1]

Plaintiff Sharandeep Venable ("Venable"), a native-born U.S. citizen of Indian nationality and Indian appearance, as well as a member of the Sikh religion, was hired by U.S. Steel on October 2, 2006. At the time, Venable's name was Sharandeep Sandhu. Venable worked in the Pipe Mill Accounting Department of the Fairfield Works as an accounting clerk. Her immediate supervisor was Chuck Alsdurf ("Alsdurf"), a Caucasian male. It is undisputed Alsdurf made the decision to hire Venable.

Other than Alsdurf and one other employee, the employees who worked in the Pipe Mill Accounting Department were represented by the United Steelworkers of America ("USWA"). Pursuant to the Basic Labor Agreement ("BLA") between USWA and U.S. Steel, all new hires were

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

probationary employees. As a probationary employee, Venable could be discharged within the first twenty-four weeks for any reason except a discriminatory reason.

On February 7, 2007, within the probationary, twenty-four week period, Alsdurf informed Venable that her employment was terminated. He told Venable that he knew what he wanted from his team, and she was not it; he did not want her on his team and she did not "fit in." (Pl. Dep. at 105; Pl. Decl. ¶8; Alsdurf Dep. at 105.) According to Alsdurf, he thought Venable had a bad attitude, complained about her work and not wanting to complete tasks, and she made errors that he spent hours fixing. He contends that he gave Venable several verbal reviews and warnings prior to her termination, but he finally concluded her performance was not going to change. Alsdurf informed William McNally ("McNally"), the Fairfield Works Controller, that he wanted to fire Venable, and McNally approved the termination.

Venable disputes Alsdurf's account. She testified that she did not complain, was praised for her work, and asked for more work because she did not always have enough to do. She maintains that Alsdurf never verbally

counseled her regarding her performance, nor was she given any warnings.

According to Venable, she was fired because Joyce McGehee ("McGehee"), the head clerk of the Pipe Mill Accounting Department, disliked her. McGehee trained Venable and Marretha Beale ("Beale"), an accounting clerk hired at the same time as Venable, on aspects of their job. Venable testified that McGehee asked her repeated questions about the Indian culture—the style of Indian marriages, the significance of henna markings on the hands, why Indian women wear a "red dot" on their forehead, nose rings, etc. Venable also contends that McGehee asked her if her religion believes in Jesus Christ. When Venable told McGehee that it was blasphemy to think Jesus was the Son of God, McGehee rolled her eyes, turned, and walked away. On another occasion, McGehee told Venable and Beale a story about her sister dressing in a sheet to pretend like she was an Indian at a casino. Venable testified that she found the story offensive but did not say anything to McGehee. McGehee also introduced Venable to another Indian employee, telling the plaintiff that she thought they might like to talk about India together.

During orientation, Venable received a copy of the BLA. She read the

BLA, and saw its grievance and arbitration procedures, as well as the procedures for filing a civil rights complaint. Venable also acknowledged that she received copies of U.S. Steel's sexual harassment and discriminatory harassment policies. Venable, however, never made any complaints about McGehee's conduct, nor did she tell McGehee that she was bothered by her questions or statements.

Annette Canada, a Caucasian Christian female, was hired to replace Venable. Plaintiff filed a charge of discrimination with the EEOC on March 14, 2007, and instituted this action on May 23, 2008.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

Venable has not argued that she has direct or statistical evidence of discrimination with regard to her discharge; therefore, we analyze her race, national origin, ethnicity, and religion claims using the analytical framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998).  First, the plaintiff must establish a prima facie case of discrimination.  The prima facie case creates a presumption of discrimination, which the employer must rebut with legitimate, nondiscriminatory reasons for the employment action(s) at issue.  "If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual." *Standard*, 161 F.3d at 1331.

A.    Four-Prong Prima Facie Case.

To establish her prima facie case of discriminatory discharge, Venable "must show that: (1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; and (4) [s]he was replaced by a person outside [her] protected class or was

treated less favorably than a similarly-situated individual outside [her] protected class." *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Ed.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

It is undisputed that Plaintiff belongs to the requisite protected classes and her termination constitutes an adverse employment action. U.S. Steel argues that it is entitled to summary judgment on Venable's termination claims because Venable cannot show she was qualified for the position at issue, or that a similarly-situated individual outside her protected classes was treated more favorably. (Doc. 18 at 14-19.) With regard to the fourth prong of the prima facie case, however, it is undisputed that Venable was replaced by Annette Canada, a Caucasian, Christian female; therefore, no evidence of a similarly-situated individual is necessary.

As support for its argument that Plaintiff was not qualified for the position of accounting clerk, U.S. Steel contends that Alsdurf was not satisfied with Venable's job performance. Venable has correctly countered, however, that "subjective evaluations play no part in the plaintiff's prima facie case." *Vessels v. Atlanta Indep. School Sys.*, 408 F.3d 763, 769 (11th Cir. 2005). In order to satisfy the "qualified" prong of the prima facie case,

a "plaintiff need only show that he or she satisfied an employer's objective qualifications. The employer may then introduce its subjective evaluations of the plaintiff at the later stages of the *McDonnell Douglas* framework." *Id*. Because Venable's alleged failure to meet her employer's expectations is not "objectively verifiable," *id*., and the evidence shows Plaintiff met the objective qualifications for the accounting clerk position because Alsdurf interviewed and hired her for that position, Venable has established the second prong of her prima facie case.

B.   Knowledge.

Typically, the Court's inquiry into the prima facie case would end here, and we would proceed to the next step of the *McDonnell Douglas* analysis. However, U.S. Steel also argues that Plaintiff cannot establish a prima facie case of discrimination because Alsdurf, as the decision-maker, had no knowledge Venable's race, ethnicity, national origin, or religion. (Doc. 18 at 19-20.) Without such knowledge, the defendant maintains, there can be no presumption or inference of discrimination.

The Eleventh Circuit Court of Appeals has held: "when we evaluate a charge of disparate treatment employment discrimination, we must focus

on the actual knowledge and actions of the decision-maker." *Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1306 (11th Cir. 2002). Therefore, a plaintiff cannot establish a prima facie case of intentional discrimination without evidence that the decision-maker knew of the plaintiff's protected class. *Id.* (citing *Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987)). Alsdurf testified he was unaware of Plaintiff's ethnicity, national origin, or religion. (Alsdurf Dep. at 40-41.) Venable contends that this is incorrect for two reasons: (1) Alsdurf must have overheard comments and questions between McGehee and Venable on the topic of her protected classes, and (2) Venable relies on the "cat's paw" theory, so McGehee's knowledge is the relevant inquiry.

       1.     Overheard Remarks.

The issue of whether Alsdurf was present to overhear comments and questions between McGehee and Venable on the subject of Plaintiff's protected classes has become the focus of a motion to strike, which was filed by the defendant. (Doc. 22.) U.S. Steel asks the Court to strike the last sentence of the second paragraph of Plaintiff's declaration as contrary to previous sworn deposition testimony. The second paragraph reads, in

part, as follows:

> She [McGehee] asked me about Indians and the significance of "red dots," Indian marriage traditions and rituals, jewelry such as the nose ring, Indian food, the color white in Indian culture, and other things. *She did this several times in Chuck Alsdurf's presence.*

(Pl. Decl. ¶ 2 (emphasis added).)  In her deposition testimony, however, Venable testified:

> Q: Now, who was present when she [McGehee] would ask these questions and you would give her your answers?
> A: Marretha.
> Q: Anyone else?
> A: No.
> Q: Chuck wasn't there?
> A: He was down the hall.
> Q: Okay. So he couldn't have heard it?
> A: Not all of them, no.
> Q: Well, could he have heard any of them?
> A: Possibly, yes.
> Q: Do you know if he ever overheard any of these conversations?
> A: Not to my knowledge.

(Pl. Dep. at 85.)

The law in this circuit is that affidavits, or portions thereof, may be disregarded as a "sham" when "a party has given clear answers to

unambiguous questions which negate the existence of any genuine issue of material fact, [and the party] thereafter create[s] such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984). Venable's subsequent affidavit statement, at first glance, does contradict her previous deposition testimony. However, the Court cannot conclude that the previous deposition testimony is so "clear" that the statement in the affidavit is a "sham." At her deposition, Venable testified that Alsdurf possibly could have overheard the questions and answers while he was down the hall. Perhaps this was the meaning of "presence" intended in the affidavit. Because Defendant has not met the standard outlined in *Van T. Junkins*, the motion to strike is denied.

Regardless, the testimony is unhelpful for Plaintiff's argument, because it does not indicate for the Court which questions or answers were made in Alsdurf's alleged "presence." And, despite earlier assertions that Alsdurf was aware of some of these comments regarding Plaintiff's race/national origin/ethnicity and laughed in response (Doc. 24 at 2), Venable has since testified under oath that she has no knowledge that

Alsdurf overheard any of the conversations between her and McGehee regarding her Indian race/national origin/ethnicity or Sikh religion. This evidence is insufficient to show that Alsdurf knew Venable was a member of a protected class.

      2.    Cat's Paw.

It is undisputed that McGehee was aware of Plaintiff's race/ethnicity/national origin and religion. Venable argues that it does not matter if Alsdurf knew about her protected classes because he was merely a "cat's paw" for McGehee's discriminatory animus.

In the Eleventh Circuit, "a discharge recommendation by a party with no power to actually discharge the employee may be actionable if the plaintiff proves that the recommendation directly resulted in the employee's discharge." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th 1999). However, "this causation must be *truly direct*. When the biased recommender and the actual decisionmaker are not the same person or persons, a plaintiff may not benefit from the inference of causation that would arise from their common identity." *Id*. (emphasis added). "Instead, the plaintiff must prove that the discriminatory animus behind the

recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee." *Id.* (citing *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1248 (11th Cir. 1998)).  Under the "cat's paw" theory espoused by Venable, "causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee.  In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." *Id.* at 1332 (citing *Llampallas*, 163 F.3d at 1249).

Plaintiff has not met her burden at summary judgment to present sufficient admissible evidence that Alsdurf acted as a mere "cat's paw" or "rubber stamp" for McGehee's alleged discriminatory animus.  The evidence shows McGehee did not have the authority to recommend Venable's termination.  Questions of fact do exist regarding the veracity of Alsdurf's reasons for Plaintiff's termination, as outlined below.  Those questions, however, do not establish, and the Court cannot speculate, that Alsdurf terminated the plaintiff without any independent consideration solely

because McGehee asked him to do so.  Plaintiff has not shown, therefore, that McGehee's knowledge of Venable's protected classses can be imputed to Alsdurf.

       3.     Appearance.

Yet, after a thorough review of the record, and viewing the evidence in the light most favorable to the plaintiff, the Court does find that there is sufficient evidence to create a genuine issue of fact whether Alsdurf was aware of Venable's Indian race/ethnicity/national origin.  Venable testified that both of her parents were Indian, and she is Indian in appearance.  According to the plaintiff,  she believed others would realize she was Indian based on her appearance alone.  (Pl. Dep. at 44.)  Moreover, at the time she was hired and worked at U.S. Steel, Venable's name was Sharandeep Sandhu.  While these facts are not conclusive on the issue, they are sufficient for a jury to consider and decide whether Alsdurf had knowledge of Plaintiff's Indian race/ethnicity/national origin.

However, as outlined above, there is no evidence that Alsdurf had knowledge of Plaintiff's religion.   "An employer cannot intentionally discriminate against an individual based on [her] religion unless the

employer knows the individual's religion. *Lubetsky*, 296 F.3d at 1306. Therefore, summary judgment will be granted with respect to Venable's religious discrimination claim.

    C.    Legitimate, Non-Discriminatory Reason(s) and Pretext.

U.S. Steel has proffered evidence that Venable's employment was terminated because of work performance issues, including poor attitude, poor work ethic, and errors in work assignments. Plaintiff has not disputed that these are legitimate, nondiscriminatory reason for her discharge; she must, therefore, show that U.S. Steel's reasons are pretextual. *Standard*, 161 F.3d at 1334.

A plaintiff succeeds in showing pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (citing *McDonnell Douglas*, 411 U.S. at 804-05). "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Rioux v. City of Atlanta*, 520 F.3d 1269, 1278 (11th Cir. 2008) (quoting *Holifield v. Reno*, 115 F.3d

1555, 1565 (11th Cir. 1997)). "The plaintiff must demonstrate weaknesses or implausibilities in the employer's proffered legitimate reasons for its action sufficient for a reasonable factfinder to disbelieve the reasons." *Id.* (citing *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001)). "It is the plaintiff's burden not merely to raise a suspicion regarding an improper motive, but rather to demonstrate there is a genuine issue of material fact that the employer's proffered reason for his [termination] was pretextual." *Id.* (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1024-25 (11th Cir. 2000)).

After full review of the record, the Court finds that the plaintiff has presented sufficient evidence to convince a reasonable jury that Alsdurf's reasons are unworthy of credence. Conflicting witness testimony creates genuine issues of fact regarding the "bulk" of the proffered non-discriminatory reasons for Venable's termination. *Vessels*, 408 F.3d at 771. Alsdurf testified that McGehee complained to him multiple times about Venable's poor attitude (Alsdurf Dep. at 41); however, McGehee swore she never complained to Alsdurf about the plaintiff (McGehee Dep. at 37-38). According to McGehee, she only spoke to Alsdurf about Venable on one

occasion—when the plaintiff went to another employee for help and McGehee felt that was inappropriate. (*Id.* at 28-31, 38.) On an evaluation form signed December 29, 2006, Alsdurf wrote that Venable "is often not being productive[, and] is always looking for a way to get out of work." But, Alsdurf also wrote that Venable "seems to get along with her coworkers alright," and checked "satisfactory" for "cooperation with supervisors and co-workers," "willingness to learn, initiative, and effort," and "quality, accuracy, workmanship." (Doc. 19, Ex. 10.) Alsdurf testified that Plaintiff complained to him about his choice of sodas for the office, not wanting to complete work tasks, and not being able to leave work early. (Alsdurf Dep. at 43-46, 52.) Venable swore she never made such complaints. (Venable Dep. at 88-89; Venable Decl. ¶ 6.) Alsdurf said he was in the clerks' work area, where he could observe the plaintiff, a few hours a day. (Alsdurf Dep. at 78.) Beale, the other accounting clerk, testified it was more like once a week, or once every two or three weeks. (Beale Dep. at 18.) Alsdurf also testified he had multiple sit-downs with the plaintiff to warn her about her work performance (Alsdurf Dep. at 51, 56-57, 63-64), but Venable denies these warnings ever occurred (Venable Dep. at 70-71; Venable Decl. ¶4).

Plaintiff has gone beyond arguing that she did not have a bad attitude, or that she did not make errors and performed her work well. The disputes of fact cited go directly to Alsdurf's credibility and address occurrences that were within his personal knowledge. *Vessels*, 408 F.3d at 771.

Defendant argues, however, that there is a "strong 'same actor' inference here that would completely refute any alleged evidence of discrimination." (Doc. 18 at 21 n.15.) It is undisputed that Alsdurf hired Venable, and ultimately he terminated her employment. In the Eleventh Circuit, "these facts may give rise to a *permissible inference* that no discriminatory animus motivated [Alsdurf's] actions." *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998) (emphasis in original). "[I]t is the province of the jury rather than the court, however, to determine whether the inference generated by 'same actor' evidence is strong enough to outweigh a plaintiff's evidence of pretext." *Id*. "[A] prima facie case plus evidence permitting disbelief of the employer's proffered reasons equals the plaintiff's entitlement to have the factfinder decide the ultimate issue of discrimination." *Id*. (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1531 (11th Cir. 1997)). Therefore, summary

judgment on Venable's race/ethnicity/national origin claims is inappropriate.

V.   Conclusion.

For the reasons set forth above, Defendant's motion for summary judgment will be granted in part and denied in part. Defendant has raised the issue of limiting damages due to after-acquired evidence. If necessary, the Court will take that up at trial. A separate order will be entered.

Done this <u>16th</u> day of <u>June 2009</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297